STATE of Missouri, ex rel., Jeremiah W. NIXON, Respondent,

v.

Wayne McCLURE, Appellant.

No. WD 54529.

Missouri Court of Appeals, Western District.

May 26, 1998.

Wayne McClure, Jefferson City, pro se.

Jeremiah W. (Jay) Nixon, Atty. Gen., Gail Vasterling, Kimberly A. Harper, Asst. Attys. Gen., Jefferson City, for respondent.

Before EDWIN H. SMITH, P.J., and SMART and ELLIS, JJ.

ELLIS, Judge.

Wayne McClure was convicted of first degree assault and armed criminal action in the Circuit Court of Cole County. On June 24, 1994, he was sentenced to concurrent terms of twenty-five years in the Missouri Department of Corrections (MDOC). On June 29, 1994, he was placed in the custody of MDOC.

As a result of his previous service as a federal government employee, McClure had put money into the Civil Service Retirement and Disability Fund and a federal Thrift Savings Plan. Prior to his conviction, McClure received lump-sum payments of $28,077.15 and $1658.11 from these programs which were deposited in a checking account at the Arsenal Credit Union on March 3, 1994.

On February 5, 1996, McClure had $300 transferred from his checking account at the Arsenal Credit Union to his inmate account at the Missouri Eastern Correctional Center. The State took note of this transaction and discovered McClure's account at the Arsenal Credit Union which still contained over $24,600. On April 12, 1996, the State filed a petition for inmate reimbursement under the Missouri Incarceration Reimbursement Act ("MIRA"), § 217.825 et seq.[1] The State's petition also requested that all of McClure's assets be frozen and a receiver appointed to protect and maintain them until the State's petition for reimbursement was ruled on. That same day, the Circuit Court of Cole County issued an Order giving McClure until May 20, 1996, to show cause why a judgment should not be entered appropriating and applying his assets to reimburse the state for the costs of his confinement in the state's correctional facility. The court also appointed Rodney Kueffer, inmate treasurer for the

1. All statutory references are to RSMo 1994 unless otherwise noted.

State of Missouri, as receiver for any and all funds held on behalf of McClure and ordered that those funds not be disbursed except upon court order. The court allowed McClure access to $7.50 per month from his inmate account.

On May 14, 1996, McClure filed a *pro se* motion entitled, "Defendant's Motion to Show Cause."[2] On October 11, 1996, the State filed a Motion for Summary Judgment and suggestions in support of that motion. On November 14, 1996, McClure filed a motion entitled, "Defendant's Motion for Preliminary Injunction," requesting that his assets be freed and claiming that the money in his checking account was comprised of his Civil Service retirement benefits which were exempt from reimbursement. In his suggestions in support of his motion, McClure claimed that under federal law his retirement benefits were exempt from levy, attachment, and garnishment. On December 16, 1996, the State filed a "Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment."[3] In that reply, the State argued that McClure's civil service benefits were not protected by 5 U.S.C. § 8346 because that protection ceased once the funds were placed in the possession of a beneficiary. On January 16, 1997, McClure filed a "Reply to Plaintiff's Response to Motion for Summary Judgment," in which he argued that the language of 5 U.S.C. § 8346 continues to protect his benefits.

On February 11, 1997, the circuit court entered an amended judgment ordering McClure to reimburse the state $22,622.99 for the cost of his care and custody.[4]

On appeal, once again proceeding *pro se*, McClure claims that the trial court erred in awarding the State funds from his federal retirement benefits because such an award was contrary to 5 U.S.C. § 8346(a) and the Supremacy Clause of the United States Constitution requires that statute's application take precedence over the provisions of MIRA.

■ The State initially claims that McClure has failed to preserve his claim for review because he did not mention the Supremacy Clause or claim that the federal statute "preempted" MIRA in any of his pleadings before the trial court. "To preserve a constitutional question for review, a matter must be raised at the first opportunity, the sections of the constitution alleged to have been violated must be specifically asserted, the matter must be preserved in the motion for new trial, and the questions must be adequately covered in the briefs." *State v. Pullen*, 843 S.W.2d 360, 364 (Mo. banc 1992). "The purposes of the rule requiring that constitutional issues be raised at the earliest opportunity are to prevent surprise to the opposing party, and to permit the trial court an opportunity to fairly identify and rule on the issue." *Land Clearance for Redevelopment Auth. v. Kansas Univ. Endowment Ass'n*, 805 S.W.2d 173, 175 (Mo. banc 1991).

While McClure may not have mentioned the words, "Supremacy Clause" or "preempt," all of McClure's *pro se* pleadings filed in response to the State's motion for summary judgment and his motion to reconsider assert that the federal law relating to his civil service pension protects his money from execution, levy, attachment, garnishment or other legal process, and bars the state's attempt to acquire the funds in his bank account under MIRA. McClure's Supremacy Clause challenge is readily apparent. The State's summary judgment reply dealt extensively with the applicability of the federal statute and cites to multiple cases addressing similar challenges. McClure's claim on appeal is no different from the claim he made in his motions before the trial court.

---

2. McClure's pleadings indicate that the reason he proceeded *pro se* was because the state froze all of his assets. While not necessarily relevant to our consideration, it seems likely that this would be the case for virtually all challenges made to the State's actions under MIRA both at the circuit court level and on appeal.

3. In its reply the state treated McClure's motion for a preliminary injunction to be a response to its motion for summary judgment.

4. Under § 217.827.1, no more than ninety percent of an inmate's assets may be used for the purposes of securing reimbursement. At the time judgment was entered, McClure's account at Arsenal Credit Union contained $25,175.19.

■ Furthermore, the trial "court under the supremacy clause is obliged to apply federal law, and may not apply state law, substantive or procedural, which is in derogation of federal law." *Bunge Corp. v. Perryville Feed & Produce*, 685 S.W.2d 837, 839 (Mo. banc 1985). McClure directed the trial court's attention to a federal statute which he claimed was controlling over MIRA. The trial court was, therefore, made aware of the federal statute and was obligated to apply it if it was applicable. "[B]ecause the purpose of the rule requiring that constitutional issues be raised at the earliest opportunity, to prevent surprise to the opposing party and permit the trial court an opportunity to fairly identify and rule on the issue, was served here, [the State]'s jurisdictional challenge is denied." *Winston v. Reorganized Sch. Dist. R-2*, 636 S.W.2d 324, 327 (Mo. banc 1982).[5]

■ The State filed its claim under the MIRA which states that if a prisoner has sufficient assets to recover not less than ten percent of the estimated cost of care for the prisoner for two years, the attorney general may seek to secure reimbursement for the expenses incurred by the state of Missouri for the care of the prisoner. § 217.831.3. Not more than ninety percent of the value of the assets of a prisoner may be used for purposes of securing costs and reimbursement under MIRA. § 217.833.1. MIRA defines "assets" as "property, tangible or intangible, belonging to or due an offender or a former offender, including income or payments to such offender from social security, workers' compensation, veterans' compensation, pension benefits, previously earned salary or wages, bonuses, annuities, retirement benefits, or from any other source whatsoever ..." § 217.827.1(a). Under these provisions, the funds in McClure's bank account would appear to be subject to reimbursement under MIRA.

However, McClure claims that the funds taken by the State were protected from MIRA by 5 U.S.C. § 8346(a). That subsection provides that "[t]he money mentioned by this subchapter is not assignable, either in law or equity, except under the provisions of subsections (h) and (j) of section 8345 of this title,[6] or subject to execution, levy, attachment, garnishment, or other legal process, except as otherwise may be provided by Federal laws." 5 U.S.C.A. § 8346(a).[7]

Article VI of the United States Constitution provides that the laws of the United States government "shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art VI, § 2. "[U]nder the supremacy clause, Missouri courts are obliged to apply federal law and may not apply substantive or procedural

---

5. Moreover, McClure requests plain error review. While the State contends that plain error would be inappropriate because McClure failed to establish that the error "engendered hatred, passion or prejudice," that standard is clearly inappropriate where summary judgment is granted and no jury is involved. Rule 84.13(c) provides that "[p]lain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised 'or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 84.13(c). If indeed the State's appropriation of ninety percent of McClure's worldly assets was in contradiction to federal law, that appropriation would seem to be manifestly unjust and warrant plain error review.

6. 5 U.S.C.A. § 8345(h) provides that an individual entitled to an annuity may make allotments or assignments of amounts from the annuity for such purposes as the Office of Personnel Management in its sole discretion considers appropriate.

5 U.S.C.A. § 8345(j) provides that payments that would normally be made to an employee, member, or annuitant shall be paid by the Office to another person if and to the extent expressly provided for in the terms of (1) any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation or (2) any court order or other similar process in the nature of garnishment for the enforcement of a judgment rendered against such employee, member, or annuitant, for physically, sexually, or emotionally abusing a child.

5 U.S.C.A. § 8342(j)(1) provides that the payment of a lump-sum credit shall be subject to the terms of a court decree of divorce, annulment, or legal separation or any court order or court approved property settlement agreement incident to such decree if the decree, order, or agreement expressly relates to any portion of the lump-sum credit involved.

7. All U.S.C.A. references are to (West 1996) unless otherwise noted.

state law which is in derogation of federal law." *Reis v. Peabody Coal Co.,* 935 S.W.2d 625, 630 (Mo.App. E.D.1996) (citing *Bunge Corp. v. Perryville Feed & Produce, Inc.,* 685 S.W.2d 837, 839 (Mo. banc 1985)). The issue, then, is whether the trial court improperly awarded the State funds in violation of federal law.

In 1988, the United States Supreme Court held that a similar inmate reimbursement act in Arkansas was in conflict with the anti-attachment provisions of the Social Security Act insofar as the Arkansas statute specifically allowed the State to seize Social Security payments that had been made to inmates and was, therefore, in violation of the Supremacy Clause. *Bennett v. Arkansas,* 485 U.S. 395, 108 S.Ct. 1204, 99 L.Ed.2d 455 (1988). The anti-attachment language at issue in *Bennett* provided that "none of the moneys paid or payable . . . under [the Social Security Act] shall be subject to execution, levy, attachment garnishment, or other legal process." *Bennett,* 485 U.S. at 396, 108 S.Ct. at 1205. (citing 42 U.S.C. § 407(a)). The Court held:

> [T]here is a clear inconsistency between the Arkansas statute and 42 U.S.C. § 407(a) (1982 ed., Supp. III). Section 407(a) unambiguously rules out any attempt to attach Social Security benefits. The Arkansas Statute just as unambiguously allows the State to attach those benefits. As we see it, this amounts to a "conflict" under the Supremacy Clause—a conflict that the State cannot win. *See Rose v. Arkansas State Police,* 479 U.S. 1, 107 S.Ct. 334, 93 L.Ed.2d 183 (1986). We reject the State's attempt to avoid this conclusion by arguing that the federal statute contains an "implied exception" that

would allow attachment of otherwise exempted federal payments simply because the State has provided the recipient with "care and maintenance."

*Bennett,* 485 U.S. at 396, 108 S.Ct. at 1205.[8]

The language of the anti-attachment provision in § 8346(a) differs slightly from the language addressed in *Bennett* in that it states, "the money mentioned in this subchapter is not . . . subject to execution, levy, attachment, garnishment, or other legal process . . ." 5 U.S.C.A. § 8346(a). The State contends that, unlike the phrase "none of the moneys paid or payable," the phrase "money mentioned under this subsection" was only meant to protect the funds while they are under the control of the federal government and that this protection no longer applies once the funds are in the hands of the intended beneficiary.

The State initially relies on statements made in *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979).[9] *Hisquierdo* dealt with the anti-attachment provision in the Railroad Retirement Act and determined that benefits under that act were not dividable under California's community property law. *Id.* 439 U.S. at 591, 99 S.Ct. at 813.[10] The State focuses on language in *Hisquierdo* which states that Congressional intent behind the provisions of the Railroad Retirement Act was to set an amount thought appropriate to support an employee's old age and to encourage employees to retire. *Id.* 439 U.S. at 586, 99 S.Ct. at 810. Based on the language in *Hisquierdo,* the State claims the purpose of all anti-attachment provisions must be to encourage employees to retire. The State claims that protecting benefits of those who have already

---

**8.** In *Hatfield v. Cristopher,* 841 S.W.2d 761, 767 (Mo.App. W.D.1992), this court held that Social Security benefits received and held in a bank account continued to be protected under the Social Security anti-attachment provision and Missouri's garnishment statute was preempted to the extent it would allow garnishment of those funds.

**9.** In its brief, the State quotes the statutory language it believes was at issue in *Hisquierdo.* The language quoted comes from a footnote in *Hisquierdo* which relates the statutory language of the National Service Life Insurance Act dealt

with in *Wissner v. Wissner,* 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950).

**10.** The exclusion dealt with in *Hisquierdo* stated:

> Notwithstanding any other law of the United States, or of any State, territory, or the District Of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall payment thereof be anticipated.

*Hisquierdo,* 439 U.S. at 577, 99 S.Ct. at 805 (citing 45 U.S.C. § 231m).

retired would not serve that purpose and, consequently, anti-attachment provisions are not meant to protect benefits which reach the retiree. The State overlooks the fact that the protections afforded pension funds after retirement may encourage employees to retire because they know their money will continue to be protected after retirement. Furthermore, the encouragement of retirement was only one of the policy reasons listed in *Hisquierdo*, and those statements were specifically in reference to the Railroad Retirement Act and were included in a discussion of the legislative history of that act. The policy discussion in *Hisquierdo* does not help the State's case.

The State next argues that if Congress had intended to exclude money paid to a retiree it would have specifically exempted "money paid" rather than just "money mentioned by this subchapter." The State cites to two anti-attachment provisions that specifically state that "none of the moneys paid or payable" shall be subject to legal process [11] and to one provision which states that payment thereunder shall not be anticipated.[12] The State claims that it is clear from those provisions that when Congress wanted to exclude funds after they left the possession of the government, it explicitly so stated. However, as noted in *Waggoner v. Game Sales Co.*, 288 Ark. 179, 702 S.W.2d 808, 809 (1986), other federal statutes have specifically referenced "money due, or to become due" when an anti-attachment provision was meant only to protect funds still in the possession of the government. In light of Congress' prior use of specific language in both circumstances, the statutory provisions referenced by the State provide little insight into meaning of the phrase "money mentioned by this subchapter."

In further support of its argument, the State claims that the majority of cases which have addressed § 8346(a) have held that its protections cease once the money is passed into the hands of the beneficiary. It cites two cases, *In re Estate of McGreevy*, 445 Pa. 318, 286 A.2d 355, 356 (1971), and *Matter of*

*Prestien*, 427 F.Supp. 1003, 1007 (S.D.Fla. 1977). A review of the case law, however, reveals the contrary. A majority of courts considering the issue hold that the protection afforded by § 8346(a) continues to apply to the funds even after they are in possession of the payee.

*Waggoner v. Game Sales Co.*, 288 Ark. 179, 702 S.W.2d 808 (1986), is the leading case on the subject. In that case, the Arkansas Supreme Court rejected an attempt to garnish funds held in a bank account containing funds from disability payments by the Civil Service Retirement System. In so doing, the court rejected the two cases relied on the by the State, *McGreevy* and *Prestien*. The *Waggoner* court reasoned:

By this clearly expressed provision Congress makes the exemption applicable to "the money mentioned in this subchapter." The statute, unlike some others, does not base the exemption upon whether the government holds the money. Under this broad grant of immunity, the exemption attached to the money itself and, when the money was paid to the recipient, it was free from garnishment by a judgment creditor. *Accord In re Dickerson's Estate*, 168 Misc. 54, 5 N.Y.S.2d 86 (Sur.Ct.1938). (Interpreting earlier statute using the same language.)

Two courts have reached the opposite result and have held that the exemption does not apply after the money reaches the recipient. *In re Estate of McGreevy*, 445 Pa. 318, 286 A.2d 355 (1971) and *In re Prestien*, 427 F.Supp. 1003 (S.D.Fla.1977). The Supreme Court of Pennsylvania based its decision upon Congressional intent and "the general rule is that language relating to exemptions is to be strictly construed." In reading the statute and examining the legislative history of the act, we are unable to find anything to demonstrate a Congressional intent to limit the exemption to funds held by the Federal government. In fact, the Senate Report on a 1978 amendment to § 8346(a) provides: "Under exist-

---

11. 42 U.S.C.A. § 407 applies to social security benefits, and 42 U.S.C.A. § 1717 deals with disability payments made to employees of U.S. contractors working in foreign countries.

12. 45 U.S.C.A. § 231(m) is the anti-attachment provision in the Railroad Retirement Act.

ing law 5 U.S.C.A. § 8346(a), *payments* under the civil service retirement system are not assignable or subject to ... garnishment...." (Emphasis added.) S.Rep.No. 95–1084, 95th Cong., 2d Sess. [1978] U.S.Code Cong. & Ad.News 1379, 1380.

\* \* \*

Similarly, we are not persuaded by the reasoning expressed by the Federal District Court in Florida. That court based its opinion on [*McGreevy* ], and on the case of *McIntosh v. Aubrey,* 185 U.S. 122, 22 S.Ct. 561, 46 L.Ed. 834 (1902). There is no need for further discussion of the Pennsylvania case, and the case from the Supreme Court of the United States is clearly distinguishable. In that case, based upon an entirely different statute, the exemption applied to "money due, or to become due, to any pensioner." The language operated to exempt only payments due and future payments, in other words, funds still in the hands of the government, and not to funds already paid.

We are of the opinion that the better rationale is to follow the clear language of the statute and to hold that the money which came from disability payments by the Civil Service Retirement System is exempt from garnishment by a judgment creditor under the provisions of 5 U.S.C.A. 8346(a).

*Id.* 702 S.W.2d at 809.

While the state claims that "the majority of the states who have addressed the exemption of actual payments under 5 U.S.C. § 8346(a) have rejected the *Wagoneer* (sic) holding," *Waggoner* was written subsequent to the cases cited by the state and expressly rejects those cases. We have found no cases written subsequent to the 1978 amendment to § 8346(a) and its accompanying legislative history that have held contrary to *Waggoner.*[13] The Senate Report on the 1978 amend-

ment to § 8346(a), which added an exception to the anti-attachment provision for court orders relating to divorce, annulment, or legal separation and court orders relating to judgments against an individual for abusing a child, states: "Section 8346(a) now provides that the money mentioned by the civil service retirement provisions, such as annuity payments and lump-sum refunds, is not assignable or subject to execution, levy, attachment, garnishment, or other legal process, except as otherwise may be provided by Federal laws." S.Rep. No. 1084, 95th Cong., 2d Sess. (1978) U.S.C.C.A.N. 1379, 1381.

In *Sears, Roebuck & Co. v. Harris,* 854 P.2d 921, 923 (Okla.Ct.App.1993), the Oklahoma Court of Appeals rejected a claim that the provisions of § 8346(a) do not exempt payments already made to the beneficiary. The court expressly rejected the holding of *Matter of Prestien* "because the statutory language unambiguously states that these moneys are not subject to execution." *Id.*

As noted in *Waggoner,* in *In re Dickerson's Estate,* 168 Misc. 54, 5 N.Y.S.2d 86 (N.Y.Sur.Ct.1938), a New York court, interpreting an earlier statute using the same language as § 8346(a), held that the broad grant of immunity afforded under the statute "attached to the fund itself and when paid to the estate of the decedent enured to the benefit of his sole next of kin under our statutes of distribution, free from all claims against him or his estate." *Id.* 5 N.Y.S.2d at 87.

More recently, in *Joseph v. Giacalone,* 224 A.D.2d 391, 637 N.Y.S.2d 771, 772 (1996), a New York court rejected an attempt to acquire the proceeds from a $9,000 civil service retirement check. The court held that "the proceeds of the check in dispute are exempt from garnishment or levy pursuant to Federal law." *Id.* (citing 5 U.S.C. § 8346(a); *Matter of Dickerson's Estate, Waggoner v. Game Sales Co.;* and *Sears, Roebuck and Co. v. Harris* ).[14]

---

**13.** The legislative history of statutory amendments to an act are appropriately considered in ascertaining the legislative policy and intent of the original legislation. *Missouri Div. of Employment Sec. v. Labor & Industrial Relations,* 637 S.W.2d 315, 318 (Mo.App. W.D.1982).

**14.** The Supreme Court's opinion in *Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802 (1979), also provides support for the proposition that the anti-attachment provision is meant to protect the funds after they have left the possession of the U.S. government. In *Hisquierdo,* the plaintiff claimed

Given the all inclusive nature of the language "money mentioned in this subsection," [15] the legislative history of the 1978 amendment to the anti-attachment provision, and the case law that has subsequently developed, we find that the provisions of § 8346(a) continue to afford protection for the lump-sum payment made to McClure. Accordingly, the trial court erred in ordering the State reimbursed from those funds.

The judgment is reversed and remanded for further proceedings consistent with this opinion.

All concur.

that the anti-attachment provision of the Railroad Retirement Act "does no more than restate the Government's sovereign immunity from burdensome garnishment suits, and so has no effect on her right to require petitioner to reimburse her as he receives benefits." *Id.* 439 U.S. at 587, 99 S.Ct. at 810. In rejecting this argument, the Supreme Court stated that it could not "so lightly discard the settled view that anti-assignment statutes have substantive meaning." *Id.* 439 U.S. at 587, 99 S.Ct. at 811.

**15.** In *Whetzal v. Alderson,* 32 F.3d 1302 (8th Cir.1994), holding that a former federal employee's right to receive a lump-sum benefit was excluded from his bankruptcy estate, the Court stated:

> [W]e find no basis for a distinction under the civil service statute between payments made as an annuity and the lump-sum credit. It is significant that the Civil Service Retirement Act, in imposing the restrictions against alienation, uses the phrase "money mentioned by this subchapter," *id.* § 8346(a), rather than such narrower terms as "annuity" or "periodic payments." In our view, the word "money" clearly includes the lump-sum payment that is available under 5 U.S.C. § 8342.

*Id.* at 1304.