Andrea BECHTEL, by her next friend, Barbra BECHTEL, Appellant,

v.

STATE of Missouri DEPARTMENT OF SOCIAL SERVICES, FAMILY SUPPORT DIVISION, Respondent.

No. SC 89416.

Supreme Court of Missouri,
En Banc.

Jan. 13, 2009.

Anthony E. Rothert, American Civil Liberties Union of Eastern Missouri, St. Louis, Nancy E. Emmel, Sindel & Emmel, Clayton, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., James Layton, State Solicitor, LaSandra F. Morrison, Asst. Atty. Gen., Kansas City, MO, for Respondent.

RICHARD B. TEITELMAN, Judge.

Andrea Bechtel appeals from a judgment of the circuit court of St. Louis County finding that the Missouri Department of Health and Senior Services properly denied personal care assistance benefits under section 208.900.1, RSMo Supp.2005.[1] The judgment is reversed, and the case is remanded.

## FACTS

The facts of this case are not in dispute. Andrea Bechtel is 39 years old. She has physical and mental disabilities that necessitate the use of a wheelchair and assistance with the activities of daily life. Andrea's mother, Barbra Bechtel, lives with Andrea and has provided for Andrea's physical care for her entire life. Barbra has been Andrea's court appointed guardian since 1993.

In 2000, Barbra began to receive benefits on Andrea's behalf under the personal care assistance (PCA) program established pursuant to section 178.661 to 178.673, RSMo 2000. Eligibility for the PCA program was based on the existence of a physical disability.

On August 29, 2005, the statutes establishing the PCA program were replaced by section 208.900. The new PCA program is not available to "any individual with a legal limitation of his or her ability to make decisions, including appointment of a guardian...." Section 208.900.1. Andrea's mental disabilities required the appointment of a legal guardian; therefore, the department notified Andrea that she was no longer eligible for personal care services under the PCA program. After excluding Andrea from the PCA program, the department continued to provide services to her pursuant the MO HealthNet program. Section 208.152.1(14). Under the MO HealthNet program, Barbra is ineligible to receive benefits on Andrea's behalf because she is a family member. *Id.* Instead of offering financial assistance to Barbra, the state furnished Andrea with benefits under the MO HealthNet program through three provider agencies. The benefits include some personal care services.

Andrea appealed the denial of benefits under the PCA program. The hearing officer found that the department properly denied benefits under the PCA program because the plain language of section 208.900.1 excludes individuals who have been appointed a guardian due to a mental disability.

Andrea filed a petition for review in the circuit court, alleging that section 208.900.1 violated Title II of the Americans with Disabilities Act, 42 U.S.C. section 12132; the Rehabilitation Act of 1973, 29 U.S.C. section 794; and the Medicaid Act, 42 U.S.C. section 1396. The department did not defend the validity of the statute against Andrea's assertion that the statute violated these federal anti-discrimination statutes. Instead, the department argued that Andrea was ineligible to participate in the program under the plain language of section 208.900.1. The circuit court entered a judgment finding, without explanation, that Andrea's termination from the PCA program was lawful and did not violate any federal statutes.

Andrea appeals. She argues that section 208.900.1 unlawfully discriminates against individuals with mental disabilities by categorically excluding them from benefits to which they otherwise would be entitled because of a physical disability. Andrea concludes that section 208.900.1 is invalid because it constitutes discrimination on the basis of mental disability in

---

1. All further statutory references are to RSMo Supp.2005, unless otherwise specified.

violation of the aforementioned federal anti-discrimination statutes.

## ANALYSIS

■ The issue of whether a state statute conflicts with federal law is a legal question. The standard of appellate review is de novo. *In re Estate of Shuh,* 248 S.W.3d 82, 84 (Mo.App.2008).

■ Medicaid is a program under which the federal government assists participating states in providing health care to people who cannot afford it. McNeil-Terry v. *Roling,* 142 S.W.3d 828, 833 (Mo.App. 2004). Missouri has opted to participate in the Medicaid program and, therefore, must comply with all federal statutory and regulatory requirements. *See Harris v. McRae,* 448 U.S. 297, 301, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980).

The department argues that Andrea's appeal is without merit because she still receives the same personal care services that she received prior to the statutory changes in 2005. The department has not previously argued or made an evidentiary record regarding the alleged equivalency of the benefits and services provided to Andrea under the MO HealthNet program. The first time the department made this argument was in the briefs submitted to this Court. There is no evidence in the record of the type of services provided to Andrea under the MO HealthNet program, the quality of those services, or whether the services currently provided are in any way comparable in terms of the level of assistance that Andrea previously received. Even though appellate review is de novo, the department's factual assertions of equality cannot be assessed based on briefing alone and absent an evidentiary record.[2] Consequently, if Andrea adequately has proved that her rights under the federal anti-discrimination statutes were violated, she is entitled to receive the personal care services she received under the PCA program prior to August 29, 2005.

■ The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. section 12132. To establish a violation of the ADA, Andrea must show that:

> (1) she is a qualified individual with a disability; (2) she was otherwise qualified for the benefit in question; and (3) that she was excluded from the benefit due to discrimination based upon disability.

*Randolph v. Rodgers,* 170 F.3d 850, 858 (8th Cir.1999).[3]

2. The PCA program and the MO HealthNet program have different goals. The PCA program provides assistance with "ambulation, housekeeping, or other functions of daily living based upon an independent living philosophy." 19 C.S.R. 15–8.100(O)(8). In contrast, the MO HealthNet program provides assistance with "medically related household tasks, including approved homemaker and chore tasks." 13 C.S.R. 70–91.010.2(B)(7). Unlike the services offered under the PCA program, the services offered under the MO HealthNet program are only those that are "medically related." It is apparent from these different program goals that the services offered are not the same.

3. The ADA and the Rehabilitation Act provide the same rights, procedures and remedies. *See Barnes v. Gorman,* 536 U.S. 181, 184–85, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002) (Title II provides same rights, procedures and enforcement remedies as the Rehabilitation Act). The only difference is that the Rehabilitation Act applies to entities that receive federal financial assistance. *Gorman v. Bartch,* 152 F.3d 907, 912 (8th Cir.1998).

Andrea has established each of the prerequisites for pleading a violation of the ADA. First, the stipulated facts establish that Andrea is a qualified individual with both mental and physical disabilities. Prior to 2005, Andrea was considered a "qualified individual" and received assistance through Missouri's PCA program. Andrea presently receives benefits under the MO Health Net program. She is a qualified individual with a disability and is entitled to department services.

Second, Andrea is otherwise qualified for benefits from the PCA program. Prior to 2005, Andrea received benefits under the PCA program due to her physical disabilities. The 2005 amendment to section 208.900.1 specifically excluded from the PCA program those individuals with mental disabilities while retaining benefits for those who only have a physical disability. Andrea is still physically disabled and is, therefore, "otherwise qualified" for participation in the PCA program.

Finally, Andrea was excluded from the PCA program due to discrimination based on disability. The only reason Andrea is not eligible for participation in the PCA program is because section 208.900.1 discriminates among persons with physical disabilities by excluding from the PCA program those individuals with a mental disability requiring the appointment of a guardian. Exclusion on the basis of a mental disability is exclusion by reason of disability. Therefore, Andrea stated a valid claim of discrimination under the federal anti-discrimination statutes.

■■ Once unlawful discrimination is shown, the department must provide reasonable accommodation for the disability at issue. The reasonable accommodation requirement does not apply if the depart-

ment can assert and prove, as an affirmative defense, that accommodation would require a fundamental modification of the program or impose an undue burden. *Frederick L. v. Dept. of Public Welfare,* 364 F.3d 487, 492 (3rd Cir.2004). The department did not raise any defense or present any evidence relating to the feasibility of accommodation. The department's failure to raise an accommodation defense constitutes waiver of that defense. Rule 55.08.

Andrea pleaded and proved that section 208.900.1 violates the ADA and the Rehabilitation Act by excluding her from participation in the PCA program on the basis of her mental disability.[4] The judgment of the circuit court is reversed, and the case is remanded.

LAURA DENVIR STITH, C.J., PRICE, RUSSELL, WOLFF and BRECKENRIDGE, JJ., and HARDWICK, Sp.J., concur. FISCHER, J., not participating.

---

4. Given the disposition of the case, it is unnecessary to assess the alleged conflict between the section 208.900.1 and the Medicaid act.