J.P. and H.P., by J.P., His Attorney in Fact; D.S. and R.S., by D.S., His Attorney in Fact; V.P. and G.P., by V.P., Her Attorney in Fact; S.M. and V.M., by S.M., Her Attorney in Fact, Appellants,

v.

**MISSOURI STATE FAMILY SUPPORT DIVISION AND ITS DIRECTOR, Janel Luck, Respondents.**

No. WD 70994.

Missouri Court of Appeals, Western District.

April 20, 2010.

Application for Transfer Denied Sept. 21, 2010.

---

1. Snelling's motion to strike Respondent Phillip I. Morse's brief, which has been taken with the case, is denied.

Barbara J. Gilchrist, John J. Ammann, St. Louis, MO, Mary R. McCormick, Liberty, MO, Dianne M. Hansen, Springfield, MO, Michael C. Week, St. Charles, MO, for Appellants.

Thais A. Folta, Sarah E. Ledgerwood, Jonathan M. Hensley, Jefferson City, MO, for Respondents.

Before: Thomas H. Newton, C.J., James M. Smart, Jr., and Cynthia L. Martin, JJ.

THOMAS H. NEWTON, Chief Judge.

The Missouri State Family Support Division (the Division) denied J.P., H.P.; D.S., R.S.; V.P., G.P.; and S.M., V.M. (the Couples) eligibility for long-term care benefits under Missouri's Medicaid program because of the ownership of certain annuities. The Couples sought declaratory and injunctive relief in a lawsuit, alleging that the policy applied by the Division was in violation of state and federal law. The trial court denied their claims. At issue is whether a community spouse's income from a commercial annuity may be considered an available resource in determining an institutionalized spouse's eligibility for Medicaid assistance. We reverse and remand.

**Factual and Procedural Background**

Medicaid is a cooperative federal-state program assisting low-income individuals in meeting the costs of their medical care. *State v. Knight*, 280 S.W.3d 647, 650 (Mo. App. W.D.2009). A state choosing to participate in the program receives reimbursement from the federal government for a portion of the cost of providing medical assistance. *In re Estate of Shuh*, 248 S.W.3d 82, 84 (Mo.App. E.D.2008). Participation requires the state to comply with federal statutes and regulations and to "'develop[ ] a plan containing reasonable standards ... for determining eligibility for ... medical assistance' within boundaries set by the Medicaid statute and the Secretary of Health and Human Services." *Wis. Dep't of Health & Family Servs. v. Blumer*, 534 U.S. 473, 479, 122 S.Ct. 962, 151 L.Ed.2d 935 (2002) (quoting *Schweiker v. Gray Panthers*, 453 U.S. 34, 36–37, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981)); *see also Knight*, 280 S.W.3d at 650. Missouri's state Medicaid program is codified at section 208.001, et. seq. *Knight*, 280 S.W.3d at 650. In 2007, Missouri's pro-

gram was renamed "MO HealthNet." *Oanh Thile Huynh v. King*, 269 S.W.3d 540, 542 n. 2 (Mo.App. W.D.2008).

In order to qualify for Medicaid assistance, a person's available income and assets must be below certain limits. *Shuh*, 248 S.W.3d at 84. When a married person enters a nursing home (the "institutionalized spouse"), the finances of both the institutionalized spouse and the non-institutionalized spouse ("community spouse") are considered in determining if the institutionalized spouse is eligible for Medicaid assistance for the costs of long-term care. *N.M. v. Div. of Med. Assistance & Health Servs.*, 405 N.J.Super. 353, 964 A.2d 822, 823 (N.J.Super.Ct.App.Div.2009) (citing 42 U.S.C. § 1396r–5(c)(2)). Consequently, a couple may have to dispose of their assets to reduce them below federal and state limits—also known as "spending down"— before the institutionalized spouse can become eligible for assistance. *Shuh*, 248 S.W.3d at 84. These "spend down" requirements can pose a hardship on a community spouse, "who face[s] the prospect of being left with virtually nothing to live on once the couple's income and resources are reduced to the level necessary to qualify for Medicaid." *Id.*

In 1988, Congress enacted the Medicare Catastrophic Coverage Act (MCCA), which contains provisions allowing the community spouse to shelter income and a degree of assets from being considered available for the institutionalized spouse's long-term medical care.[1] *Id.* In enacting the MCCA, Congress sought to protect the community spouse from poverty, but it also wanted to protect the Medicaid system from abuse. *Id.* at 86. Thus, because Medicaid's purpose is to provide medical assistance to needy persons, the MCCA also contained provisions to prevent Medicaid applicants from artificially impoverishing themselves to obtain benefits. *McKenzie v. State, Dep't of Soc. Servs., Div. of Family Servs.*, 983 S.W.2d 196, 198 (Mo.App. E.D.1998).

After the MCCA's enactment, when one spouse enters a long-term care facility and another remains in the community, a division of assets is performed. *Gee v. Dep't of Soc. Servs., Family Support Div.*, 207 S.W.3d 715, 716 (Mo.App. W.D.2006). A portion of the couples' assets is set aside for the benefit of the community spouse and is not used in calculating the institutionalized spouse's Medicaid eligibility.[2] *Blumer*, 534 U.S. at 480–81, 122 S.Ct. 962. This resource allowance is referred to as the "community spouse resource allowance," or "CSRA." *Id.* at 478, 122 S.Ct. 962. "Although the community spouse's *resources* must be taken into account in determining whether the institutionalized spouse satisfies the resource eligibility limit, the community spouse's *income* may not be considered in determining whether the institutionalized spouse satisfies the income eligibility limit." *N.M.*, 964 A.2d at 823 n. 1 (citing 42 U.S.C. § 1396r–5(b)(1)) (emphasis added). The community spouse's income is reserved solely for the benefit of the community spouse. 42 U.S.C. 1396r–5(b)(1); *Blumer*, 534 U.S. at 480–81, 122 S.Ct. 962.

---

1. "Congress later repealed MCCA through the Medicare Catastrophic Coverage Repeal Act of 1989, 103 *Stat.* 1979, but the spousal impoverishment prevention provisions were retained ..." *N.M. v. Div. of Med. Assistance & Health Servs.*, 405 N.J.Super. 353, 964 A.2d 822, 826 n. 4 (N.J.Super.Ct.App.Div.2009).

2. Initial Medicaid eligibility is governed by different rules than those applying to determine the extent of assistance after eligibility is granted. *Blumer*, 534 U.S. at 490, 122 S.Ct. 962. "Other provisions specifically address income allocation in the period after the institutionalized spouse becomes Medicaid eligible." *Id.* at 481, 122 S.Ct. 962.

Congress subsequently enacted the Deficit Reduction Act of 2005(DRA) which "effect[ed] broad changes to the laws governing Medicare and Medicaid coverage." *Vieth v. Ohio Dep't of Job & Family Servs.*, No. 08AP–635, 2009 WL 2331870, at *4 (Ohio App. July 30, 2009) (internal quotation marks and citation omitted). The Medicaid Program's treatment of annuities was among those changes. *Id.* Also in 2005, the Missouri Legislature enacted section 208.212, which provided that a pre-eligibility investment in an annuity "shall be limited" to those annuities that were: (1) actuarially sound, (2) provided for roughly equal payments over the life of the annuity and excluded balloon-style final payments, and (3) named Missouri as "secondary or contingent beneficiary ... ensuring payment if the individual predeceases the duration of the annuity" for the payments made by the State on the individual's behalf. § 208.212 RSMo Cum. Supp.2005.

In July 2007, the Missouri Legislature amended section 208.212. The section now provides that the stream of income from an annuity will not be considered an available resource in determining Medicaid eligibility, provided the annuity meets the prior three requirements (actuarially sound, roughly equal payments over the annuity's life, Missouri named as remainder beneficiary) and a new requirement: the annuity must "Name and pay the MO HealthNet claimant as the primary beneficiary." [3] § 208.212.1(4).

■ The Division is charged with administering Missouri Medicaid policy. Prior to the July 2007 amendment of section 208.212, the Division treated the income stream from an annuity as excluded from the resources available to an institutionalized spouse, so long as the annuity met section 208.212's three requirements. *See* Mo. State Family Support Div. Income Maint. Manual § 1030.030.05 (2005). In November 2007, the Division amended the "Income Maintenance Manual" (IMM), which is what its employees rely on in making eligibility determinations. [4] The Division interpreted section 208.212.1(4) to require the income stream from an annuity to be paid to the institutionalized spouse in order to exclude the annuity income from the eligibility determination. Mo. State Family Support Div. Income Maint. Manual §§ 1030.030.05–10.10 (2007). As a result of its interpretation, the Division adopted a definition of "primary beneficiary" which equates the term with the "annuitant" or the initial payee of an annuity. *Id.* at § 1030.030.05. Consequently, the Division now includes annuities that pay income to the community spouse in the calculation of resources

---

**3.** Section 208.212.1 states:
1. For purposes of MO HealthNet eligibility, the stream of income from investment in annuities shall be excluded as an available resource for those annuities that:
 (1) Are actuarially sound as measured against the Social Security Administration Life Expectancy Tables, as amended;
 (2) Provide equal or nearly equal payments for the duration of the device and which exclude balloon-style final payments;
 (3) Provide the state of Missouri secondary or contingent beneficiary status ensuring payment if the individual predeceases the duration of the annuity, in an amount equal to the MO HealthNet expenditure made by the state on the individual's behalf; and
 (4) Name and pay the MO HealthNet claimant as the primary beneficiary.

**4.** "[T]he IMM does not constitute a compilation of valid rules and has no legal controlling force. [It] is a publication distributed to caseworkers and to claimants for guidance in presenting and processing claims." *Couch v. Dir., Mo. State Div. of Family Servs.*, 795 S.W.2d 91, 93 (Mo.App. W.D.1990) (citation omitted).

available to the institutionalized spouse. *See id.* at § 1030.030.10.10.

The Couples were denied Mo HealthNet eligibility because the Division determined that the community spouse's ownership of an annuity prevented the institutionalized spouse from qualifying for assistance. The Division determined that the annuities were not excluded from the resource computation because the new subsection 208.212.1(4) required that the institutionalized spouse be the recipient of the income stream. The parties do not dispute whether the annuities at issue otherwise met the requirements for exclusion under section 208.212.1. The Couples sought declaratory and injunctive relief. The trial court determined that the Division's decisions on Medicaid eligibility were consistent with the amended section 208.212 and denied the request for relief. The Couples appeal, raising three points.

### Standard of Review

In a bench-tried case, we generally affirm the trial court's judgment unless there is no substantial evidence to support the decision, it is against the weight of the

evidence, it erroneously declares the law, or it erroneously applies the law. *Knight,* 280 S.W.3d at 650 (citing *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)). However, in questions of law, our review is *de novo,* and we give no deference to the trial court. *Id.* Statutory construction is a question of law, as is the issue of whether a state statute conflicts with federal law. *See id.; Bechtel ex rel. Bechtel v. State Dep't of Soc. Servs., Family Support Div.,* 274 S.W.3d 464, 467 (Mo. banc 2009).

### Legal Analysis

 In their first point the Couples argue that the Division's interpretation of section 208.212 violates federal Medicaid law. The Division states that its interpretation of Medicaid eligibility requirements is consistent with Congressional intent.[5] This point is dispositive of the case; the other points will not be addressed.

When a state accepts federal Medicaid funds, it is required to comply with federal statutes and regulations in administering the program. *Mo. State Div. of Family Servs. v. Barclay,* 705 S.W.2d 518, 521

---

5. The Division also argues that the Couples waived their claim that the Division's interpretation conflicts with federal law by failing to raise preemption in the trial court. Preemption is a constitutional claim which must be raised at the earliest opportunity in the litigation. *State ex rel. Nixon v. McClure,* 969 S.W.2d 801, 803 (Mo.App. W.D.1998). However, we reject the Division's argument and find it unnecessary to address in detail. First, this is not a preemption case, but rather an issue of statutory construction. Second, the purpose of the requirement to raise constitutional issues at the first opportunity is "to prevent surprise to the opposing party, and to permit the trial court an opportunity to fairly identify and rule on the issue." *Id.* (internal quotation marks and citation omitted). Where the purposes of the rule are served, the challenge may be denied. *Id.* at 804. As the Couples note, Medicaid is a cooperative federal-state program and discussion of state poli-

cy necessarily involves federal law. Further, the Couples raised federal Medicaid policy in their "Memorandum in Support of Motion for Preliminary Injunction" and asserted that the MCCA requires the Division to follow federal Medicaid policy in making eligibility determinations in their "Response to Defendants' Post–Trial Brief." On its part, the Division raised federal law in its post-trial brief, contending that its interpretation of section 208.212 was consistent with federal Medicaid law and Congressional intent. Numerous other references to the interplay between state and federal Medicaid law and policy run throughout the record. Consequently, even if preemption were at issue, the record is sufficient to support that this issue was raised by implied consent, that there was no surprise to the Division, and that the trial court had an opportunity to respond to the issue. *See id.;* Rule 55.33(b).

(Mo.App. W.D.1985). A state may design its own plan, but the plan must operate within the framework set forth by the federal government. *Id.* Thus, Missouri is obligated to comply with federal conditions. *Id.*; *see also Shuh,* 248 S.W.3d at 84. Missouri law, section 208.010.6, also "explicitly requires that the Agency must comply with federal law ... when determining the eligibility of institutionalized spouses for medical assistance benefits." *Gee,* 207 S.W.3d at 721. That provision states:

> when determining the eligibility of institutionalized spouses, as defined in 42 U.S.C. Section 1396r–5, for medical assistance benefits as provided for in section 208.151 and 42 U.S.C. Sections 1396a et seq., the division of family services shall comply with the provisions of the federal statutes and regulations.

§ 208.010.6. Federal regulations provide that "[i]n determining the eligibility of individuals under the income standards established under this section, the agency must not take into account income that would be disregarded in determining eligibility for SSI or for an optional State supplement." 42 C.F.R. § 435.622(b). Federal statutory law further provides that "[t]he methodology utilized to determine eligibility for services by the state cannot be more restrictive than the methodology utilized by the federal government." *Plumb v. Mo. Dept. of Soc. Servs., Family Support Div.,* 246 S.W.3d 475, 479 (Mo.App. E.D.2007) (citing 42 U.S.C. § 1396a(r)(2)(A)).

We believe the Division's interpretation of section 208.212, which includes annuity income paid to the community spouse as a resource available to the institutionalized spouse, is contrary to federal Medicaid law. In *James v. Richman,* addressing an eligibility issue occurring before Congress enacted the DRA, the Third Circuit found that "an irrevocable, non-alienable annuity" payable only to the community spouse could not be included in a calculation of available resources because it "does not fit the statutory definition of an available resource." 547 F.3d 214, 219 (3d Cir.2008). The court reasoned that because the state's methodology cannot be more restrictive than the method used by the SSI, "the Department cannot treat as available resources any assets that the SSI regulations would not treat as available resources." *Id.* at 218. It concluded that because the annuity could not be transferred without the community spouse incurring legal liability for breach of contract, it did not fit the SSI regulatory definition of an "available resource," which required that the owner have the power to liquidate the resource. *Id.* (citing 20 C.F.R. § 416.1201(a)(1)). Although the Department in *James* argued that the community spouse could sell the rights to the annuity payments, and thus had the power to liquidate, the *James* court rejected this hypothetical on the basis that the theory supported counting social security income and retirement payments as "available resources" despite Congress's statutory directive that "no income of the community spouse shall be deemed available to the institutionalized spouse." *Id.* at 219 (quoting 42 U.S.C. § 1396r–5(b)(1)).

Following enactment of the DRA, a New Jersey appellate court determined that the value of a community spouse's annuity *could* be used in determining an institutionalized spouse's eligibility for Medicaid. *N.M.,* 964 A.2d at 829. The *N.M.* court reasoned that in the DRA, Congress sought to close loopholes that allowed the wealthy to hide assets in order to qualify for Medicaid, that the DRA required annuities to be disclosed, and that an agency within the Department of Health and Human Services charged with administering

Medicaid had issued a publication stating that "even if an annuity is not subject to [transfer] penalty under the provisions of the DRA, this does not mean that it is excluded as income or resource." *Id.* at 828.[6]

*N.M.'s* interpretation, however, was rejected in both *Weatherbee ex rel. Vecchio v. Richman,* 595 F.Supp.2d 607, 611–12 (W.D.Pa.2009), and *Vieth,* 2009 WL 2331870, at *10. The *Weatherbee* court relied on the reasoning in *James* and rejected the Department's argument that *James* was distinguishable as a result of the DRA.

> A community spouse's income . . . is completely protected and does not affect the . . . eligibility of the institutionalized spouse. Where the payment of income from a trust or other instrument is made solely in the name of the community spouse, the income is considered to be income to that spouse only, unless the instrument providing the income specifies otherwise. Federal regulations define payments from an annuity as unearned income.

595 F.Supp.2d at 611 (internal citations omitted). The *Vieth* court similarly found that the DRA did not alter "the longstanding rule under 42 U.S.C. 1396r–5," which preserves the community spouse's income from eligibility requirements, nor

did it undermine the rationale in *James. Vieth,* 2009 WL 2331870, at *11. *See also Johnson v. Lodge,* 673 F.Supp.2d 613, 617 (M.D.Tenn.2009) (approving the "annuity method" of determining CSRA increases).

The Division refers us to subsections 42 U.S.C. § 1396p(c)(1)(F) and (e)(4), enacted in the DRA, for the proposition that federal law prohibits one spouse from transferring all of the couples' assets into an annuity in order to qualify for Medicaid. However, the provisions the Division cites do not support this proposition. Subsection 42 U.S.C. § 1396p(c)(1)(F) provides that a transfer of assets "shall be treated as the disposal of an asset for less than fair market value" (thereby triggering transfer penalties) unless the annuity names the State as a "remainder beneficiary."[7] Subsection 42 U.S.C. § 1396p(e)(4) provides, "Nothing in this subsection shall be construed as preventing a State from denying eligibility for medical assistance for an individual based on the income or resources derived from an annuity described in paragraph (1)." This latter paragraph, as cogently stated in *Weatherbee:*

> expressly limits its effect to 'this subsection.' It does not purport to alter the well-established rule . . . that 'no income of the community spouse shall be deemed available to the institutionalized

---

6. "Transfer penalties" create periods of ineligibility for assistance: "[m]edicaid applicants may not artificially impoverish themselves to obtain benefits . . . if an institutionalized claimant or her spouse disposes of assets for less than fair market value on or after a . . . look-back period, a claimant is ineligible for medical assistance for a period of time . . ." *McKenzie v. State, Dept. of Soc. Servs., Div. of Family Servs.,* 983 S.W.2d 196, 198 (Mo.App. E.D.1998).

7. The entirety of the subsection states:

> (F) For purposes of this paragraph, the purchase of an annuity shall be treated as

the disposal of an asset for less than fair market value unless—
>> (i) the State is named as the remainder beneficiary in the first position for at least the total amount of medical assistance paid on behalf of the institutionalized individual under this subchapter; or
>> (ii) the State is named as such a beneficiary in the second position after the community spouse or minor or disabled child and is named in the first position if such spouse or a representative of such child disposes of any such remainder for less than fair market value.

42 U.S.C. § 1396p(c)(1)(F).

spouse.' 42 U.S.C. § 1396r–5(b)(1). Indeed, 42 U.S.C. § 1396r–5(a)(1) provides that, '[i]n determining the eligibility for medical assistance of an institutionalized spouse ... the provisions of this section supersede any other provision of this subchapter ... which is inconsistent with them.' ... 42 U.S.C. § 1396p(e)(4) simply makes clear that which would otherwise be implied. Namely, that disclosing the purchase of an annuity and naming the state as a remainder beneficiary will not, in and of itself, *prevent* a state from denying eligibility for income or resources derived from an annuity. A state could, for example, deny eligibility for a variety of reasons including, but not necessarily limited to, lack of an actuarially sound annuity or where the income from the annuity was not solely for the benefit of the community spouse. 595 F.Supp.2d at 616–17. Indeed, the section delineates "those additional requirements with which a Medicaid applicant must comply in order to *successfully* transfer assets, without penalty, to an irrevocable annuity." *Id.*

We find the reasoning in *James*, *Weatherbee*, and *Vieth* persuasive. More importantly, we find the relevant federal statutes to dictate a result. Income includes "any payments received as an annuity, pension, retirement, or disability benefit." 42 U.S.C. § 1382a(a)(2)(B). Title 42 U.S.C. § 1396r–5(b)(1) declares that "no income of the community spouse shall be deemed available to the institutionalized spouse." Although the DRA added notification and disclosure requirements related to annuities, Congress did not choose to abrogate these standing provisions or the decisions interpreting them. Although the Division argues that Congress did not intend to permit the sheltering of assets in a program designed to benefit the poor, "[i]t is for the Congress to determine if and how this loophole should be closed."

*Mertz ex rel. Mertz v. Houstoun*, 155 F.Supp.2d 415, 428 (E.D.Pa.2001). Consequently, the Division's denial of Medicaid eligibility based on the community spouses' income from these annuities does not comply with existing federal Medicaid eligibility rules. Because both federal law and Missouri law require the Division to comply with federal eligibility rules, the policy cannot stand. *See Bechtel*, 274 S.W.3d at 468 (reversing and remanding where Department's denial of benefits was improper under federal Medicaid law, despite Department's reliance on amended Missouri statute).

The Division, however, argues that it is only implementing changes instituted by the Missouri legislature in the 2007 amendment of section 208.212. It argues that its interpretation of section 208.212 was intended by the Missouri Legislature. In other words, the Division contends that the Legislature intended "primary beneficiary" as used in subsection 208.212.1(4) to mean that the institutionalized spouse must be the person receiving the annuity's income stream. The Couples, however, argue that the Legislature intended "primary beneficiary" to mean the institutionalized spouse must be designated to receive the income stream in the event of the community spouse's death.

■ When interpreting a statute, our primary task is to determine the legislature's intent. *In re Estate of Bruce*, 260 S.W.3d 398, 401 (Mo.App. W.D.2008). "The preferred means for doing this is to accord the statute's language its plain and ordinary meaning." *Id.* However, we do not construe a statute narrowly if that interpretation would conflict with the statute's purpose. *PDQ Tower Servs., Inc. v. Adams*, 213 S.W.3d 697, 698 (Mo.App. W.D.2007). "Indeed, the [Missouri] Supreme Court has instructed that the pri-

mary rule of statutory construction is to glean legislative intent by understanding the statute according to its objective." *Bruce,* 260 S.W.3d at 405. Isolated sentences do not guide us: "[W]e look to the provisions of the whole law and its object and policy." *Renner v. Dir. of Revenue,* 288 S.W.3d 763, 766 (Mo.App. E.D.2009).

Under these rules of construction, we cannot accept the Division's interpretation of the isolated phrase "primary beneficiary" in subsection 208.212.1(4). First, the Division's reading results in the section creating a rule that, in order to be excluded from the resource computation, the annuity must pay the income stream to the institutionalized spouse. We cannot agree with the Division that the Missouri Legislature intended to exclude from the resource computation those annuities which pay income to the institutionalized spouse—the very person receiving Medicaid benefits. We fail to see that such a rule has a plausible rationale within the Medicaid scheme. Moreover, although the Division argues that the intent of section 208.212 is to prevent couples from sheltering assets, it fails to explain how its interpretation of subsection 208.212.1(4) furthers this goal.

Second, given Medicaid's dual concerns with protecting a community spouse from poverty, while at the same time barring couples from sheltering assets for their heirs, we find it more reasonable that the Missouri Legislature added that an excludable annuity must "[n]ame and pay the MO HealthNet claimant as the primary beneficiary" in order to ensure that an excluded annuity could not pay another heir in the event of the community spouse's death. Reading the provisions together, as we must, subsection 208.212.1(3) then provides that in the event of the institutionalized spouse's subsequent death the State shall be the "secondary or contingent beneficiary" for the amounts expended on the institutionalized spouse's behalf.

██ Finally, we are obliged to read different "statutes relating to the same subject matter *in pari materia,* meaning that we interpret and apply them with reference to each other." *State ex rel BPS Tel. Co. v. Mo. Pub. Serv. Comm'n,* 285 S.W.3d 395, 405 (Mo.App. W.D.2009). As noted, Missouri's section 208.010.6 explicitly requires the Division to comply with federal law when determining the eligibility of institutionalized spouses for medical assistance benefits. *Gee,* 207 S.W.3d at 721. As discussed *supra,* the Division's interpretation of section 208.212.1(4) is not in compliance with federal Medicaid law. The Division's interpretation consequently would place section 208.212 in conflict with section 208.010.6. We are to harmonize sections of statutes, not read them to be in conflict with one another. *See PDQ Tower Services, Inc.,* 213 S.W.3d at 698. Moreover, we read statutes so as to give effect to the legislature's purpose. *Renner,* 288 S.W.3d at 765. We find it unreasonable to imagine that the Missouri Legislature amended a statute in order to render it ineffectual through its conflict with federal law. Point one is granted.

## Conclusion

For the foregoing reasons, we reverse the judgment of the trial court and remand for the trial court to issue a judgment consistent with this opinion.

SMART and MARTIN, JJ., concur.