Bertha CRUZ, Appellant,

v.

MO. DEPARTMENT OF SOCIAL SERVICES, Respondent.

No. WD 74667.

Missouri Court of Appeals, Western District.

Dec. 4, 2012.

---

Katie Wood, for Appellant.

Randell G. Collins, for Respondent.

Before Division Two: JOSEPH M. ELLIS, Presiding Judge, ALOK AHUJA, Judge and MARK D. PFEIFFER, Judge.

JOSEPH M. ELLIS, Judge.

Bertha Cruz ("Claimant") appeals from a judgment entered by the Circuit Court of Jackson County affirming an order from the Director of the Missouri Department of Social Services, Family Support Division ("the Division"), affirming the denial of her applications for Medicaid coverage for dialysis treatments she received from October 3, 2008, to February 16, 2010. For the following reasons, the Director's Decision and Order is affirmed.

Claimant has end stage renal disease ("ESRD"). Her ESRD requires Claimant to receive regular hemodialysis treatments. Prior to receiving her dialysis treatments, Claimant can experience such symptoms as vomiting, diarrhea, body aches, bloating of the face, arms, and legs, itching, chills, and leg pains. Additionally, between dialysis treatments, Claimant can become hyperkalemic. Hyperkalemia is a condition that results from high levels of potassium in the blood and has the potential to cause serious heart problems. Aside from a kidney transplant, dialysis is the only treatment for Claimant's ESRD.

From October 3, 2008, to February 16, 2010, Claimant received her dialysis treatments twice a week through the emergency room at Truman Medical Center ("TMC"). Claimant applied to the Division for Medicaid benefits[1] to cover the cost of these dialysis treatments. The Division found that, although Claimant satisfied the categorical and financial criteria

---

1. "Medicaid is a cooperative federal-state pro-          gram assisting low-income individuals in

for Medicaid benefits, she did not satisfy the citizenship and alien requirements.

Claimant is a "qualified alien," meaning she is a lawful permanent resident of the United States. *See* 8 U.S.C. § 1641(b)(1). However, qualified aliens like Claimant cannot receive federal means-tested public benefits, such as Medicaid, until they have resided in the United States for a minimum of five years.[2] *See* 8 U.S.C. § 1613(a).

The Medicaid statute, however, does provide one exception under which qualified aliens that have not resided in the United States for five years can receive Medicaid benefits. Aliens, like Claimant, who satisfy all other Medicaid requirements and are not seeking coverage for an organ transplant can receive Medicaid coverage for care or services rendered to treat an emergency medical condition. *See* 42 U.S.C. § 1396b(v)(2). Thus, since Claimant was not eligible under the five-year rule, the Division reviewed Claimant's applications for Medicaid benefits to determine whether her dialysis treatments constituted care or services rendered to treat an emergency medical condition. The Division denied all of Claimant's applications for Medicaid benefits on the basis that her dialysis treatments did not constitute treatment for an emergency medical condition because Claimant failed to meet the sudden onset requirement.[3]

In 2009, Claimant requested a hearing regarding the Division's denial of her applications for Medicaid benefits. On June 16, 2010, the Division appointed a hearing officer who conducted a hearing on the matter. Division employee Lucy Torres, the Division's medical expert Dr. Michael D. Wilson, and Claimant testified at the hearing. Claimant also provided a statement from Dr. Heather K. Isom, a doctor at TMC that had treated Claimant on several occasions.[4]

On December 27, 2010, the Director of the Division issued her Decision and Order. In her decision, the Director noted

---

meeting the costs of their medical care." *J.P. v. Mo. State Family Support Div.*, 318 S.W.3d 140, 141 (Mo.App. W.D.2010). "A state choosing to participate in the program receives reimbursement from the federal government for a portion of the cost of providing medical assistance." *Id.* Each state participating in the Medicaid program develops its own plan for determining Medicaid eligibility; however, "[s]tate programs and eligibility standards must conform to federal statutory and regulatory requirements." *Vaughn v. Mo. Dep't of Soc. Servs.*, 323 S.W.3d 44, 47 (Mo.App. E.D.2010) (internal quotation omitted). "Missouri has elected to participate in Medicaid through a program called 'MO HealthNet.'" *Id.* Claimant entered the United States in 2006; thus, Claimant had not resided in the United States for the requisite five years when she applied for Medicaid benefits to cover the dialysis treatments she received from October of 2008 through February of 2010.

2. "[A]n alien who is a qualified alien ... and who enters the United States on or after Au-

gust 22, 1996, is not eligible for any Federal means-tested public benefit for a period of 5 years beginning on the date of the alien's entry into the United States with a status within the meaning of the term 'qualified alien.'" 8 U.S.C. § 1613(a).

3. The Division denied all of Claimant's requests for Medicaid coverage for her dialysis treatments. However, Claimant was approved for coverage for services rendered from July 2, 2009, through July 16, 2009. During that time period, doctors discovered Claimant had an infection around the catheter site. Claimant was admitted to the hospital, and the old catheter was surgically removed and replaced with a new catheter.

4. At the time of the hearing, Claimant did not have Dr. Isom's prepared statement to offer into evidence. The hearing officer left the record open in order for Claimant to provide Dr. Isom's statement. The Division contested the record being left open for the admittance of Dr. Isom's statement during the administrative proceedings. The Director found that

[t]here is a disparity between the United States Code and the Code of Federal Regulations for the provisions that pertain to the treatment of non-qualified aliens. The U.S. Code does not indicate that the medical condition must be "of sudden onset," while the Code of Federal Regulations and the Social Security Act do require that the medical condition be of sudden onset. The memorandum used as the defining source for the form used by Dr. Wilson, also indicated that the medical condition must be of sudden onset. Without a clear indication that the U.S. Code is correct and the Code of Federal Regulations along with Title XIX of the Social Security Act are incorrect[,] the standard appears to be that the medical condition must be of sudden onset.

The Director went on to conclude that "claimant has a severe chronic illness for which her symptoms improve with dialysis and then worsen over the course of a few days until she needs her next dialysis treatment. The symptoms do not develop suddenly or unexpectedly, and therefore, are not of sudden onset." Thus, the Director affirmed the Division's denial of Medicaid benefits on the basis that Claimant's symptoms were not of sudden onset.

Claimant appealed from the Director's Decision and Order to the Circuit Court of Jackson County. On November 10, 2011, the circuit court entered its judgment affirming the Director's Decision and Order. Claimant timely filed her appeal to this Court.

■■■ Claimant raises two points of error on appeal challenging the Director's

Decision and Order, which affirmed the Division's denial of Medicaid benefits. On appeal, we review the decision of the administrative agency, not the judgment of the circuit court. *Dambach v. Dep't of Soc. Servs., Family Support Div.,* 313 S.W.3d 188, 190 (Mo.App. E.D.2010). Our review is limited to determining whether the administrative agency's decision

(1) Is in violation of constitutional provisions;

(2) Is in excess of the statutory authority or jurisdiction of the agency;

(3) Is unsupported by competent and substantial evidence upon the whole record;

(4) Is, for any other reason, unauthorized by law;

(5) Is made upon unlawful procedure or without a fair trial;

(6) Is arbitrary, capricious or unreasonable;

(7) Involves an abuse of discretion.

§ 536.140.2 RSMo Cum.Supp.2009; *see also Dambach,* 313 S.W.3d at 190. "In reviewing the decision, we must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the decision; that is, whether the decision is contrary to the overwhelming weight of the evidence." *Dep't of Soc. Servs., Div. of Med. Servs. v. Senior Citizens Nursing Home Dist. of Ray Cnty.,* 224 S.W.3d 1, 6 (Mo.App. W.D. 2007). "We will not substitute our judgment for that of the [Director] on factual matters, but questions of law are matters for the independent judgment of this court." *Id.* at 5 (internal quotation omitted).

such evidence was admissible pursuant to § 208.080.7. Because the Division does not challenge the Director's findings with respect to Dr. Isom's letter, we do not address the issue on appeal.

In her first point, Claimant asserts that the Director erred in denying her Medicaid benefits on the basis that she did not meet the "sudden onset" requirement because the "sudden onset" requirement is contrary to federal law in that it impermissibly modified the federal Medicaid statute by creating a more restrictive definition of "emergency medical condition."

To be eligible for Medicaid coverage pursuant to 42 U.S.C § 1396b(v)(2), qualified aliens that have not resided in the United States for at least five years must establish: (1) the "care and services are necessary for the treatment of an emergency medical condition of the alien," (2) the "alien otherwise meets the eligibility requirements for medical assistance under the State [approved Medicaid] plan," and (3) "such care and services are not related to an organ transplant procedure." An emergency medical condition is

a medical condition (including emergency labor and delivery) manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—

(A) placing the patient's health in serious jeopardy,

(B) serious impairment to bodily functions, or

(C) serious dysfunction of any bodily organ or part.

42 U.S.C. § 1396(b)(v)(3).

Likewise, the Division's policy regarding emergency medical care for ineligible aliens provides that emergency medical conditions occur when:

After sudden onset, the medical condition (including emergency labor and delivery) manifests itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in:

1. Placing the patient's health in serious jeopardy;

2. Serious impairment of bodily functions; or

3. Serious dysfunction of any bodily organ or part.

Memorandum IM–137 from the Missouri Department of Social Services on Emergency Medical Care for Ineligible Aliens (Dec. 16, 1997). The Division's definition of emergency medical condition differs from the definition found within the federal Medicaid statute only by its inclusion of the sudden onset language. In all other respects, the Division's policy mirrors the definition of emergency medical condition in the federal Medicaid statute.

■ Claimant contends that because the Director affirmed the Division's denial of benefits on the basis that her symptoms were not of sudden onset, we must find the Director's Order and Decision contrary to the law. However, the Director made the following factual finding:

The symptoms presented on the dates of service that were rejected for [Medicaid] coverage were such that the absence of *immediate* medical attention *could not* reasonably be expected to result in:

• Placing the patient's health in serious jeopardy,

• Serious impairment to bodily functions; or

• Serious dysfunction of any bodily organ.

Thus, the Director clearly made a finding that the absence of immediate medical at-

tention—in this case, Claimant's dialysis treatments—would not place Claimant's health in serious jeopardy or result in serious impairment or dysfunction to Claimant's bodily functions or organs.

The Director's finding with respect to Claimant's need for immediate medical attention is supported by substantial and competent evidence in the record. Dr. Wilson testified that several of the medical records indicated that Claimant was asymptomatic when she arrived at TMC requesting dialysis. The medical records reflect that, on several occasions, Claimant had "no other acute complaints" when she presented at TMC requesting hemodialysis. The majority of the medical records provide that Claimant stated "she went to the emergency room today to get another round of hemodialysis." Often, the medical records note that Claimant was experiencing "baseline symptoms" or "mild nausea" while denying any vomiting, diarrhea, chest pains, constipation, fever, dysuria, abdominal pain, cough, itching, or headaches. Some medical records even indicate that Claimant stated she "currently has no issues," "denies any complaints at this time," or "felt ok" when she arrived at TMC requesting dialysis.

Dr. Wilson also testified that Claimant's dialysis treatments, though carried out in an emergency room, were essentially like scheduled medical care. Claimant testified that she goes every Monday and Thursday for dialysis treatments. Several medical records state that Claimant presented at TMC for her "routine dialysis" and others indicate that Claimant presents regularly on Mondays and Fridays requesting hemodialysis. Thus, there was substantial and competent evidence from which the Director could find that Claimant's symptoms were not such that the absence of immediate medical attention could reasonably be expected to place Claimant's health in serious jeopardy, result in serious impairment to Claimant's bodily functions, or result in serious dysfunction of Claimant's bodily organs.

Claimant contends that we cannot consider the Director's finding that she was not in need of "immediate medical attention" because the sole basis for the Director's denial was the "sudden onset" requirement. Claimant is correct that, at the conclusion of her decision, the Director stated:

> The form used by Dr. Wilson[5] did not require that "immediate" medical treatment be given to qualify for coverage. This is a lesser standard than appears in the other legal sources.

Claimant's dialysis treatment is necessary for her survival, but it does not have to be given to her immediately or as soon as possible upon her arrival to

---

**5.** Dr. Wilson is a licensed physician that works for the Division. He reviews medical records for the Division to determine whether claimants are eligible for Medicaid coverage. In each case he reviews, Dr. Wilson receives the claimant's medical records along with a worksheet, which includes several questions pertaining to an alien's eligibility for Medicaid coverage. The worksheet used by Dr. Wilson contained the following definition of emergency medical condition:

Definition: After sudden onset, the medical condition (including emergency labor and delivery) manifests itself by acute symptoms of sufficient severity (including severe pain) such that the absence of medical attention could reasonably be expected to result in:
1. Placing the patient's health in serious jeopardy;
2. Serious impairment to bodily functions; or
3. Serious dysfunctions of any bodily organ or parts.

the emergency room. The evidence certainly indicated that treatment was necessary, however. Had Claimant met the sudden onset requirement, she would have only needed to prove that she needed treatment, as opposed to immediate treatment.

However, the fact that the form used by Dr. Wilson while evaluating Claimant's medical records omitted the word "immediate" does not negate the Division's policy regarding emergency medical care for ineligible aliens. The Division's policy clearly states that emergency medical condition means a "medical condition ... such that the absence of *immediate* medical attention could reasonably be expected to result in" one or more of the three statutory consequences. (Emphasis added). Thus, the Division's policy, in conformance with the federal Medicaid statute, requires the claimant to be manifesting symptoms that require immediate medical attention.

█ Therefore, although the Director denied Claimant Medicaid benefits on the basis that her symptoms were not of sudden onset, the Director did make a finding that Claimant's symptoms did not require immediate medical attention. Our "primary concern is the correctness of the result reached by the administrative agency and not the route taken to reach it." *Turner v. Copley,* 351 S.W.3d 49, 57 (Mo. App. W.D.2011). "We will not reverse the decision of an administrative agency that reaches the right result even if it gave a wrong or insufficient reason for its ruling." *Ellis v. Mo. State Treasurer,* 302 S.W.3d 217, 220 (Mo.App. S.D.2009). Thus, "[i]n such situations, the decision [of the administrative agency] may be affirmed if the reviewing court could reach the same result based on the same evidence without weighing the evidence or assessing credibility." *Turner,* 351 S.W.3d at 57.

As previously discussed, the Director found that Claimant failed to satisfy the immediate medical attention requirement. That finding is supported by substantial and competent evidence. Therefore, even if we found—which we expressly need not and do not—that the sudden onset requirement impermissibly restricts the definition of emergency medical condition, we would still be compelled to affirm the Director's Decision and Order on the basis that Claimant failed to satisfy the immediate medical attention requirement. Accordingly, Claimant's first point need not be reached in the context of this appeal.

In her second point, Claimant asserts that the Director erred in rejecting her applications for Medicaid coverage because the Director failed to properly evaluate the existence of Claimant's "emergency medical condition" in that the Director failed to adequately consider how Claimant's current medical condition would affect her in the days to come. Claimant contends that the Medicaid statute required the Director to take "a forward looking view" and consider how the current condition may affect the patient in the days to come. Claimant cites *Szewczyk v. Department of Social Services,* 275 Conn. 464, 881 A.2d 259, 271 (2005), for the general proposition that the Medicaid statute "encompasses payment for care beyond that which is immediately necessary to stabilize a patient." Claimant further relies on *Scottsdale Healthcare, Inc. v. Arizona Health Care Cost Containment System Administration,* 206 Ariz. 1, 75 P.3d 91, 98 n. 9 (2003), which similarly stated that Arizona's Medicaid statute "considers both the patient's current condition, that is whether the condition is presently manifested by acute symptoms, and how that current condition may affect the health of the patient in the days to come."

Contrary to Claimant's contention, however, the cases on which she relies addressed whether a claimant is still entitled to Medicaid benefits after he or she has been stabilized, but remains hospitalized as a result of that emergency medical condition. *Szewczyk* involved a patient that was denied Medicaid coverage for chemotherapy, biopsies, and surgery performed during his initial hospitalization, which occurred after he presented at the hospital with acute symptoms, was admitted to the hospital, and was then diagnosed with leukemia. 881 A.2d at 262. *Scottsdale* involved multiple claimants that were hospitalized as a result of an emergency medical condition but were later denied Medicaid coverage once they were transferred from the hospital's acute ward to a rehabilitation ward. 75 P.3d at 93.

The majority of cases addressing the emergency medical condition standard have found that the condition "must manifest itself through acute symptoms, and the treatment for the emergency medical condition must be immediately necessary to prevent the three statutory outcomes." *Spring Creek Mgmt., L.P. v. Dep't of Pub. Welfare,* 45 A.3d 474, 483 (Pa. Commw.Ct.2012). The "condition must require *immediate* intervention to prevent the occurrence of any of the three statutorily enumerated results." *Diaz v. Div. of Soc. Servs.,* 360 N.C. 384, 628 S.E.2d 1, 4 (2006) (emphasis in original). Thus, emergency medical conditions "must necessitate immediate medical treatment, without which the patient's physical well-being would likely be put in jeopardy or serious physical impairment or dysfunction would result." *Greenery Rehabilitation Grp. v. Hammon,* 150 F.3d 226, 233 (2d Cir.1998).

We recognize that "no bright line can be drawn as to what constitutes an emergency medical condition because the unique combination of physical conditions and the patient's response to treatment are so varied that it is neither practical nor possible to define with more precision all those conditions which will be considered emergency medical conditions." *Scottsdale,* 75 P.3d at 95 (internal quotation omitted). And therefore, as conceded by the Division at oral argument, even chronic diseases or conditions such as Claimant's ESRD can result in treatment for an emergency medical condition. *See Gaddam v. Rowe,* 44 Conn.Supp. 268, 684 A.2d 286, 287 (1995). However, as previously discussed, the Director determined that Claimant's symptoms were not such that Claimant necessitated immediate medical treatment without which her physical well-being would likely be put in jeopardy or serious physical impairment or dysfunction would result. That finding was supported by substantial and competent evidence upon the record as a whole. Therefore, we cannot find that the Director failed to apply the correct standard in evaluating whether Claimant was eligible for Medicaid benefits. Point II denied.

The Director's Decision and Order is affirmed.

All concur.