

# Missouri Court of Appeals

## Southern District

### Division Two

TAMBRA LESTER,                          )
                                        )
    Petitioner-Appellant,               )
                                        )
v.                                      )    No. SD32457
                                        )    Filed: 1-16-14
DEPARTMENT OF SOCIAL SERVICES,          )
FAMILY SUPPORT DIVISION,                )
                                        )
    Respondent-Respondent.              )

### APPEAL FROM THE CIRCUIT COURT OF IRON COUNTY

Honorable Kelly W. Parker, Circuit Judge

### AFFIRMED

Tambra Lester (Claimant) appeals from a judgment entered by the Circuit Court of Iron County affirming a decision and order from the Director of the Missouri Department of Social Services, Family Support Division (the Director). The Director's decision affirmed the denial of Claimant's application for MO HealthNet for the Aged, Blind and Disabled (MHABD) benefits, based on a determination that Claimant was not permanently and totally disabled.

On appeal, Claimant contends the trial court erred in affirming the Director's denial of benefits because: (1) that decision was not based in law, in that the Director

failed to properly apply certain federal regulations; and (2) that decision was not supported by substantial evidence and was arbitrary, capricious and unreasonable, in that the Director failed to accord proper weight to medical opinion evidence. Finding no merit in either contention, we affirm.

**Standard of Review**

"On appeal, we review the decision of the administrative agency, not the judgment of the circuit court." *Cruz v. MO. Dept. of Social Services*, 386 S.W.3d 899, 902 (Mo. App. 2012). Section 536.140.2 limits our review to determining whether the administrative agency's decision:

(1) Is in violation of constitutional provisions;

(2) Is in excess of the statutory authority or jurisdiction of the agency;

(3) Is unsupported by competent and substantial evidence upon the whole record;

(4) Is, for any other reason, unauthorized by law;

(5) Is made upon unlawful procedure or without a fair trial;

(6) Is arbitrary, capricious or unreasonable;

(7) Involves an abuse of discretion.

*Id*.[1] This Court examines the whole record to determine whether there is sufficient evidence to support the decision. *Dambach v. Department of Social Services, Family Support Div.*, 313 S.W.3d 188, 191 (Mo. App. 2010). "We must examine the record in the light most favorable to the Division's decision and disregard evidence that might support findings different from those of the Division." *Id*. In addition, "[t]he

---

[1] All references to statutes are to RSMo Cum. Supp. (2010) unless otherwise specified.

determination of the credibility of witnesses is within the province of the director." *Chrismer v. Missouri State Div. of Family Services*, 816 S.W.2d 696, 700 (Mo. App. 1991); *Rader v. Missouri State Div. of Family Services*, 810 S.W.2d 346, 348 (Mo. App. 1991). We will not substitute our judgment for that of the Director on factual matters, but questions of law are matters for the independent judgment of this Court. *Cruz*, 386 S.W.3d at 902; *see Dambach*, 313 S.W.3d at 191. "If the Division's decision is supported by substantial and competent evidence found in the record, then the Division's decision should be affirmed." *Garrett v. Missouri Dept. of Social Services*, 57 S.W.3d 916, 919 (Mo. App. 2001). We have summarized the relevant facts in accordance with the foregoing principles.

**Factual and Procedural Background**

In March 2010, Claimant was 51 years of age. She injured her ankle while working as a housekeeper at a motel. Dr. Craig Ruble diagnosed Claimant's injury as a distal fibular fracture and treated Claimant for several months. Her treatment included frequent ice and elevation, anti-inflammatory medication and physical therapy. The doctor noted continued improvement and progress throughout Claimant's treatment.

In April 2010, while recovering from the ankle injury, Claimant complained to Dr. Ruble of mid-to-low back pain. Claimant reported the pain as on-and-off aching that was occasionally sharp and severe. Dr. Ruble diagnosed a lumbar strain after examination and x-rays revealed no abnormalities, fractures, dislocations or significant degeneration of the lumbar spine. The doctor recommended Claimant apply ice and/or heat frequently to her back and continue anti-inflammatory medication. He also ordered one physical therapy visit to set up a home exercise program for Claimant's back.

In May 2010, Claimant followed up with her chiropractor, Dr. Steven McAdams. He diagnosed Claimant as having a sprain or strain of the lumbar spine with associated subluxations and muscle spasms.

On May 10, 2010, after completion of Claimant's prescribed physical therapy sessions for her ankle and continued improvement, Dr. Ruble released Claimant to work an eight-hour day with the assistance of a boot, with weight bearing as tolerated. Although instances of ankle swelling or soreness were noted in follow-up appointments in May and June, Claimant's range of motion, strength, stability and pain levels continued to improve. Dr. Ruble prescribed at-home daily exercises, ice and elevation, compression hosiery and anti-inflammatory medication. Throughout these follow-up appointments, Dr. Ruble consistently reaffirmed that Claimant was able to work full duty with the assistance of a boot or ankle brace.

Thereafter, Claimant returned to work, but only for a short time. In June 2010, Claimant stopped working. According to her, she was not able to work because the demands of the job caused her right ankle and calf to swell.

On July 19, 2010, at Claimant's final appointment with Dr. Ruble, the doctor noted good range of motion of her ankle, no tenderness, and good strength and stability. Although he mentioned in his notes that Claimant was no longer employed, he maintained his recommendation that "[a]s far as work, she is obviously still full duty." He went on to state that Claimant is "at maximum medical improvement" and released Claimant to her own care.

In January 2011, Claimant applied for MHABD benefits, claiming that she was permanently and totally disabled. Claimant listed her disabling physical symptoms and

4

problems as "pain & stiffness in back, neck & ankle, headaches, limited mobility[.]" She reported "depression" as her mental health symptom and problem. Claimant submitted her application and medical information on her complaints to the Medical Review Team (the Team). On March 30, 2011, the Team determined that Claimant was ineligible for MHABD benefits because she was not permanently and totally disabled. Claimant then requested an administrative hearing.

On June 1, 2011, a hearing officer held a telephone hearing, at which several medical records were introduced into evidence. These records included a one-page report from Claimant's chiropractor, Dr. McAdams; and Dr. Ruble's records, which contained detailed examination summaries, imaging reports and physical therapy notes. The medical evidence also included records from Claimant's primary care physician, Dr. Stephanie Moniz, who had treated Claimant for low back pain on September 14, 2010 and February 8, 2011.

On the latter date, Dr. Moniz also completed residual functional capacity (RFC) questionnaires concerning Claimant's physical and mental capabilities. Based upon Claimant's responses to the questions, Dr. Moniz concluded that: (1) Claimant could only sit or stand less than two hours in an eight-hour work day; (2) she would be restricted in bending, twisting or stooping; and (3) she could only occasionally lift less than 10 pounds. The doctor also opined that Claimant would be frequently limited in her ability to focus on and handle stress related to her work tasks. Dr. Moniz characterized Claimant's ability to return to work as "poor."

During the hearing, Claimant testified about her physical and mental conditions and how they restricted her daily activities. In addition to low-back and ankle pain,

Claimant testified that she suffers from wrist pain and weakness, headaches and depression. When questioned about her ability to return to any of her prior jobs in housekeeping, cashiering or waitressing, Claimant stated that she could no longer perform those jobs. Claimant admitted, however, that she is able to: (1) do light gardening; (2) walk daily up to a quarter of a mile; (3) perform most of her own housekeeping, including laundry in her basement; (4) prepare her own meals; and (5) drive. Claimant testified that her highest level of education is one year of college. She also testified that she applied for Social Security, but was denied on the basis that she was not disabled.

Thereafter, the Director issued a decision affirming the Team's denial of MHABD benefits. The Director found that Claimant had not met her burden of proving that she was permanently and totally disabled. Although the Director found that Claimant was not gainfully employed and that her condition was "severe," Claimant's medical conditions did not meet or equal Social Security disability listings "as set forth in 20 C.F.R., Ch. III, Part 404, Subpart P, Appendix 1 ...." Specifically, the Director considered disability listings for Claimant's "spinal condition," her "leg and ankle injury" and "depression." The Director further found that Claimant was able to do past relevant work because:

> Dr. Ruble returned claimant to full duty in May 2010. Dr. Ruble's and Dr. McAdams' X-Ray reports do not demonstrate Claimant suffers from a severe spinal condition. Dr. Moniz's report is simply not enough to overcome the other medical evidence.

Lastly, the Director found that Claimant is able to do other work because:

> Claimant testified that she is able to walk a quarter of a mile. Claimant testified she is able to do laundry in the basement of her home. She is able to do light gardening such as watering the flowers and pulling weeds.

6

Claimant has experience as a cashier and experience in the food service industry. Claimant has one year of college education. There is no medical evidence that Claimant could not do other work. There is nothing in the record to support that Claimant is not capable of performing other work.

Considering Claimant's [RFC], educational level, and prior work experience, there is no evidence she will not be able to adjust to other types of work within the next 12 months and thereby engage in substantial gainful activity.

The Director therefore concluded that "Claimant is not permanently and totally disabled and [is] medically ineligible to receive MHABD benefits." This appeal followed.

**Discussion and Decision**

*Point I*

Claimant's first point contends the Director's decision to deny her application for MHABD benefits was "not based in law" in that the Director "failed to properly apply certain applicable Social Security regulations as required."[2] To properly analyze this point, an overview of the statutes and regulations governing eligibility for MHABD benefits is necessary.

Missouri administers Medicaid, which is a federal-state program providing medical assistance to needy persons pursuant to Title XIX of the Social Security Act, in a program known as "MO HealthNet." § 208.001.2; § 208.151.1; *J.P. v. Missouri State Family Support Div.*, 318 S.W.3d 140, 144-45 (Mo. App. 2010). Generally,

---

[2] We note Claimant's point is defective because it fails, *inter alia*, to reference the applicable regulations and specify the legal reasons to support the claim of reversible error, in violation of Rule 84.04(d)(2). *See Dep't of Soc. Servs. v. Peace of Mind Adult Day Care Ctr.*, 377 S.W.3d 631, 638 (Mo. App. 2012). Further, Claimant raised additional claims of error in her brief and at oral argument that were not included in her point relied on, in violation of Rule 84.04(e). *See id.* at 642 n.14. Because these deficiencies do not impede our disposition on the merits, however, we exercise our discretion to review the issues raised by Claimant's point, as best we understand them, *ex gratia. See Bank of New York v. Yonts*, 388 S.W.3d 560, 561 n.2 (Mo. App. 2012).

participation in Medicaid requires a state to develop a plan that complies with the basic federal guidelines. ***Plumb v. Missouri Dept. of Social Services, Family Support Div.***, 246 S.W.3d 475, 479 (Mo. App. 2007). "The methodology utilized to determine eligibility for services by the state cannot be more restrictive than the methodology utilized by the federal government. The state is permitted, however, to employ methodologies which are less restrictive than those utilized by the federal government." *Id*. (citation omitted).

MO HealthNet provides medical assistance for permanently and totally disabled persons. § 208.151.1(24)(c). "Persons who are eligible for [medical assistance] must meet the eligibility requirements, other than income, for ... Permanent and Total Disability ...." 13 C.S.R. 40-2.200(7).[3] To be eligible to receive such medical assistance, also known as MHABD benefits, for "permanent and total disability" means that "the individual has some physical or mental impairment, disease or loss from which recovery or substantial improvement cannot be expected and which substantially precludes him/her from engaging in any occupation within his/her competence, such as holding a job or homemaking." 13 C.S.R. 40-2.100(1). In addition, the individual also must meet the definition of "disability," as defined by the Social Security Administration to receive Social Security Disability and Supplemental Security Income (SSI), which is "the individual's inability to be gainfully and substantially employed for one year or longer due to a physical or mental incapacity." § 1060.000.00, Department of Social Services, Family Support Division, Income Maintenance Manual; ***Chrismer v. Missouri State Div.***

---

[3] All references to the Code of State Regulations are to versions in current use, namely: 13 C.S.R. 40-2.200(7) dated 12/31/05; 13 C.S.R. 40-2.100(1) dated 3/31/06. All references to the Code of Federal Regulations are to the 2010 edition.

*of Family Services*, 816 S.W.2d 696, 700 (Mo. App. 1991); *see* 20 C.F.R. § 404.1505(a) (disability benefits); 20 C.F.R. § 416.905(a) (SSI benefits). Claimant bears the burden of proving that she is permanently and totally disabled and, therefore, medically eligible to receive MHABD benefits. *See Garrett v. Missouri Dept. of Social Services*, 57 S.W.3d 916, 919 (Mo. App. 2001); *Chrismer*, 816 S.W.2d at 700.

Pursuant to 20 C.F.R. § 404.1520, a five-step analysis is used to determine disability. These five sequential steps are, in relevant part, as follows:

[Step 1] (b) *If you are working*. If you are working and the work that you are doing is substantial gainful activity, we will find you are not disabled regardless of your medical condition or your age, education, and work experience.

[Step 2] (c) *You must have a severe impairment*. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled ....

[Step 3] (d) *When your impairment(s) meets or equals a listed impairment in appendix 1*. If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience. (e) *When your impairment(s) does not meet or equal a listed impairment*. If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity based on all the relevant medical and other evidence in your case record .... We use our residual functional capacity assessment at the fourth step of the sequential evaluation process to determine if you can do your past relevant work (paragraph (f) of this section) and at the fifth step of the sequential evaluation process (if the evaluation proceeds to this step) to determine if you can adjust to other work (paragraph (g) of this section).

[Step 4] (f) *Your impairment(s) must prevent you from doing your past relevant work*. If we cannot make a determination or decision at the first three steps of the sequential evaluation process, we will compare our residual functional capacity assessment, which we made under paragraph (e) of this section, with the physical and mental demands of your past relevant work .... If you can still do this kind of work, we will find you are not disabled.

[Step 5] (g) *Your impairments must prevent you from making an adjustment to any other work.* (1) If we find that you cannot do your past relevant work because you have severe impairment(s) (or you do not have any past relevant work), we will consider the same residual functional capacity assessment we made under paragraph (e) of this section, together with your vocational factors (your age, education, and work experience) to determine if you can make an adjustment to other work. ... If you can make an adjustment to other work, we will find you not disabled. If you cannot, we will find you disabled.

*See* 20 C.F.R. § 404.1520(b)-(g) (internal references omitted); *see also* 20 C.F.R. § 416.920(b)-(g). Claimant argues that the Director erred in applying steps 3 and 4 of this analysis.

With respect to step 3, Claimant argues the Director initially erred "by not considering all of [Claimant's] impairments in combination as required by the Social Security regulations." This argument is based upon 20 C.F.R. § 404.1523, which states:

In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

*Id*.; *see also* 20 C.F.R. § 416.923. Claimant's argument fails because 20 C.F.R. § 404.1523 does not apply to step 3. Instead, it is utilized in step 2 to determine "whether your physical or mental impairment or impairments are of a sufficient medical *severity*

...." *Id*. (italics added). In the analysis for step 2 here, the Director ruled in Claimant's favor by finding that her condition was "severe."[4]

With respect to step 4, Claimant argues the Director erred by failing to make specific findings assessing Claimant's RFC and comparing her "[RFC] to the physical and mental demands of [her] past relevant work" to determine whether she is capable of performing those tasks.[5] For the following reasons, this argument also fails.

The applicable regulation is 20 C.F.R. § 404.1520(f). There are federal cases which require the fact-finder to make specific factual findings in applying the regulation. *See, e.g.*, **Groeper v. Sullivan**, 932 F.2d 1234, 1238-39 (8th Cir. 1991). Claimant does not cite any federal statute or regulation, however, which requires a state fact-finder to make the same specific findings. In Missouri, the standards for a written decision in MO HealthNet proceedings are discussed in §§ 208.080 and 536.090 RSMo (2000). With respect to findings, § 536.090 provides, in relevant part:

> Every decision and order in a contested case shall be in writing, and, except in default cases or cases disposed of by stipulation, consent order or agreed settlement, the decision, including orders refusing licenses, shall include or be accompanied by findings of fact and conclusions of law. The findings of fact shall be stated separately from the conclusions of law

---

[4] In step 3, the Director found that Claimant's impairments did not meet or equal any Social Security listing for disability. Claimant does not argue the Director erred in determining her impairments – her spinal condition, leg and ankle injury, and depression – did not qualify as a disability. Because only conditions substantiated by medical evidence can be considered in a disability determination, the Director properly disregarded Claimant's additional complaints that were not supported by medical evidence. *See* 20 C.F.R. § 404.1508 ("[a] physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms"); *see also* 20 C.F.R. § 416.908.

[5] RFC, residual functional capacity, is defined as the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*.

11

and shall include *a concise statement of the findings on which the agency bases its order.*

*Id*. (emphasis added).[6]   Whether or not an agency "made adequate findings of fact is an issue of law for our independent judgment." ***State ex rel. Public Counsel v. Pub. Serv. Comm'n***, 274 S.W.3d 569, 576-77 (Mo. App. 2009).   In ***Public Counsel***, the western district of this Court explained:

> We use a flexible standard:   The findings of fact must be sufficiently definite and certain or specific under the circumstances of the particular case to enable the court to review the decision intelligently and ascertain if the facts afford a reasonable basis for the order without resorting to the evidence.   Findings are inadequate if they cause us to speculate as to which part of the evidence the commission believed.

*Id*. at 577 (internal citations and quotation marks omitted); ***State ex rel. Aquila, Inc. v. Public Service Comm'n of State***, 326 S.W.3d 20, 28-29 (Mo. App. 2010).

We have no difficulty understanding the basis for the Director's decision that Claimant is able to perform past relevant work.   The Director relied on Dr. Ruble's May 2010 release of Claimant to work an eight-hour day with the assistance of a boot, with weight bearing as tolerated.   Although Claimant testified that she could no longer work due to swelling of her ankle and calf, the Director found Dr. Ruble's medical opinion and treatment records more persuasive.   *See* ***Chrismer v. Missouri State Div. of Family Services***, 816 S.W.2d 696, 700 (Mo. App. 1991) ("[t]he Division Director, as the determiner of facts, is not required to accept as true each and every statement of appellant"); *see, e.g.*, ***Rader v. Missouri State Div. of Family Services***, 810 S.W.2d 346,

---

[6]   Section 208.080 specifically provides that "[t]he director shall clearly state the reasons for his decision and shall include a statement of findings of fact and conclusions of law pertinent to the questions in issue." § 208.080.7 RSMo (2000).   Similarly, Missouri regulations require "a statement of Findings of Fact and Conclusions of Law" that must be based on the Missouri rules of evidence as applied to civil cases. 13 C.S.R. § 40-2.160(5)(G) dated 6/30/04.

348 (Mo. App. 1991) ("[t]he Director balanced appellant's evidence against the medical evidence and discounted appellant's complaints accordingly"). In addition, it was up to the Director to resolve conflicts in the evidence between Dr. Ruble's medical evidence and Dr. Moniz's medical evidence, including the RFC questionnaires. *See, e.g.*, *Rader*, 810 S.W.2d at 348*; see also* 20 C.F.R. § 404.1527(d)(2) (while medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner). Thus, contrary to Claimant's argument, the Director did not fail to properly apply the applicable Social Security regulations.[7] Point I is denied.[8]

*Point II*

Claimant's second point contends the Director's decision to deny her application for MHABD benefits was "not supported by substantial evidence on the record as a

---

[7] Claimant also argues that the Director failed to make explicit findings with respect to step 5; that argument fails for the same reasons stated above. Additionally, any alleged error is immaterial because the Director was not required to reach step 5. That step of the analysis is only required "[i]f we find that you cannot do your past relevant work ...." 20 C.F.R. § 404.1520(g) (underlining added). Because the Director found Claimant could perform her past relevant work, the Director properly concluded Claimant was not disabled under 20 C.F.R. § 404.1520(f) and could have ended the analysis there.

[8] The gist of all of Claimant's arguments is that the Director must make eligibility determinations in strict compliance with Social Security regulations. However, Claimant has not directed this Court's attention to any portion of the Medicaid statute that requires states to make the same factual findings required by federal decisions like *Groeper*, *supra*. Missouri's methodology to determine eligibility for services simply cannot be more restrictive than that utilized by the federal government. ***Plumb v. Missouri Dept. of Social Services, Family Support Div.***, 246 S.W.3d 475, 479 (Mo. App. 2007); *see* ***J.P. v. Missouri State Family Support Div.***, 318 S.W.3d 140, 145 (Mo. App. 2010); *see also* ***Wis. Dep't of Health & Family Servs. v. Blumer***, 534 U.S. 473, 479 (2002) (each participating state develops its own plan containing reasonable standards for determining eligibility for and the extent of medical assistance within boundaries set by the Medicaid statute and the Secretary of Health and Human Services); ***Vaughn v. Missouri Dept. of Social Services***, 323 S.W.3d 44, 47 (Mo. App. 2010); *see generally* 42 U.S.C. § 1396a (2010). The Director in this case properly evaluated all of the evidence in accordance with the five-step analysis as required under 20 C.F.R. § 404.1520.

whole [and was] arbitrary, capricious and unreasonable in that the Division Director failed to accord proper weight to medical opinion evidence." We disagree.

In support of her argument, Claimant relies on the general principle that "[a] treating physician's opinion is due controlling weight if that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005) (citation and internal quotation marks omitted). Here, however, the opinion of Claimant's physician, Dr. Moniz, was inconsistent with other medical evidence. With respect to Claimant's ability to perform past work, the Director noted that Dr. Ruble returned Claimant to full duty in May 2010 and specifically found that "Dr. Ruble's and Dr. McAdams' X-Ray reports do not demonstrate Claimant suffers from a severe spinal condition." The Director explained that "Dr. Moniz's report is simply not enough to overcome the other medical evidence." Although Claimant argues that the Director should have given controlling weight to her physician, Dr. Moniz, the Director acted well within the authority to resolve conflicts in the evidence and determine credibility. *See Chrismer*, 816 S.W.2d at 700; *Rader*, 810 S.W.2d at 348; *see also Cruz v. MO. Dept. of Social Services*, 386 S.W.3d 899, 902 (Mo. App. 2012) (this Court defers to the Director on factual matters). By relying primarily on Dr. Ruble's medical evidence, which contained detailed examination summaries, imaging reports and physical therapy notes involving Claimant's treatment over several months, the Director's decision to deny benefits was not arbitrary, capricious or unreasonable.

Moreover, the Director's decision is supported by substantial and competent evidence on the record as a whole. After determining that Claimant was not gainfully

14

employed and had a severe condition, the Director evaluated each of Claimant's medically determinable impairments and found none of her impairments met the Social Security disability listings. *See* 20 C.F.R. § 404.1520(b)-(d). The determination that Claimant could perform past relevant work was supported, in large part, by the medical records of Dr. Ruble and Dr. McAdams, which demonstrated that Claimant's ankle exhibited good strength, stability and range of motion, that her back pain was likely the result of a lumbar strain and that her depression did not interfere with her ability to work. *See* 20 C.F.R. § 404.1520(e)-(f). Because the Director's decision that Claimant failed to prove she was permanently and totally disabled was supported by substantial and competent evidence on the record as a whole, Point II is denied.

The Director's decision and order is affirmed.


JEFFREY W. BATES, P.J. – OPINION AUTHOR

GARY W. LYNCH, J. – CONCUR

MARY W. SHEFFIELD, J. – CONCUR